**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
LAROSS PARTNERS, LLC,

           Plaintiff,

      -against-

CONTACT 911 INC., and
FAMILYCONTACT911.COM, LLC,

           Defendants.

--------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-1980 (ADS)(ARL)

<u>**APPEARANCES:**</u>

**Magnozzi & Kye, LLP**
*Attorneys for the Plaintiff*
1 Expressway Plaza, Suite 114
Roslyn Heights, NY 11577
      By:  Mark F. Magnozzi, Esq.
             Cynthia S. Butera, Esq., Of Counsel

**Moran Karamouzis LLP**
*Attorneys for the Defendants*
265 Sunrise Highway, Suite 61
Rockville Centre, NY 11570
      By:  Andrew P. Karamouzis, Esq., Of Counsel

**SPATT, District Judge.**

       The Plaintiff LaRoss Partners, LLC ("LaRoss") commenced this action against Contact

911 Inc., ("Contact") and FamilyContact911.com LLC ("Family") based on claims of breach of

contract, unjust enrichment, fraud, and conversion.  The Defendants now move to dismiss the

Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

12(b)(2) for lack of personal jurisdiction against Family and pursuant to Fed. R. Civ. P. 12(b)(6)

for failure to state a claim.  For the reasons stated below, the Defendants' motion to dismiss for

lack of personal jurisdiction is denied and the motion to dismiss for failure to state a claim is granted in part and denied in part.

## I. BACKGROUND

The Plaintiff is a New York corporation that provides various services for companies like the Defendants, which are Florida corporations that provide emergency contact solutions. The purpose of an emergency contact service is that in the midst of a catastrophic event, such as a terrorist attack or natural disaster, an individual can conviently pass along a message in an automated fashion to those in one's "Contact List". This service is charged to customers on their phone bill.

On August 3, 2007, LaRoss and Contact entered into an agreement (the "Agreement") under which LaRoss would provide a number of services for Contact's internet based emergency service titled "Family Contact 911".

One type of service LaRoss agreed to provide was to apply and process for Local Exchange Carrier ("LEC") approval, specifically on behalf of the Family entity. LaRoss also contracted to provide a marketing program to sell the Family Contact 911 product. In addition, LaRoss agreed to perform Family Contact 911's billing. LaRoss used a third-party intermediary, the clearing hosue known as ILD Telecommunications ("ILD"), for this purpose. Under the Agreement, LaRoss would provide the billing services, retain a portion of the revenue, and remit the rest to Contact. In particular, LaRoss claims that it was to be paid for its services according to the terms of the Agreement, which was 40% of the Defendants' monthly billing settlement "net revenues", as that term is defined in the Agreement.

The initial term of the Agreement was set at three years. The Agreement contained a forum selection clause, which stated "If such disputes cannot be resolved, then both retain the

right to pursue legal or other remedies; with the venue for all such remedies to be set in Nassau County, State of New York, exclusively." (Pl. Mem. in Opposition Ex. 1)

According to the Plaintiff, LaRoss provided the agreed services and by the terms of the Agreement, the revenues were split, until in or around March 2009. Throughout this time, the Plaintiff claims to have distributed the shared revenues to both the Contact and Family entities. The Plaintiff first asserts that, in or around March 2009, the Defendants communicated to the Plaintiff that they would take over the billing services, but that the remaining provisions of the Agreement would remain in force, including the revenue sharing provision. LaRoss claims that the Defendants made only one further payment of the LaRoss' revenue share, in March of 2009, despite subsequent assurances from the Defendants that the Plaintiff would be receiving its share of the net revenues realized from the billing to the Family Contact 911 customers under the Agreement.

On or about March 2, 2011, LaRoss filed suit in Nassau County Supreme Court, pursuing causes of action for breach of contract, fraud, conversion, accounting, and attorneys' fees against both parties, as well as an unjust enrichment claim against Family. On April 21, 2011, the case was removed to this Court.

On October 6, 2011, Family moved to dismiss the Plaintiff's amended complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and, in the alternative, to dismiss the Plaintiff's second (unjust enrichment), third (fraud), fourth (conversion), fifth (accounting) and sixth (attorney's fees) causes of action, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Contact joined in moving to dismiss the Plaintiff's third, fourth, fifth, and sixth causes of action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Plaintiff opposes both motions.

## II. AS TO PERSONAL JURISDICTION

### A. Legal Standards

#### 1. Standard on a Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff has the burden of establishing personal jurisdiction to defeat a Rule 12(b)(2) motion to dismiss. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)). In deciding a motion to dismiss for lack of personal jurisdiction, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties. DiStefano, 286 F.3d at 84. However, where, as here, the Court "relies on the pleadings and affidavits, and chooses not to conduct a 'full-blown evidentiary hearing,' plaintiffs need only make a *prima facie* showing of personal jurisdiction over the defendant." Penguin Group (USA) Inc. v. American Buddha, 609 F.3d 30, 34–35 (2d Cir. 2010); Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 126 (2d Cir. 2008). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." Penguin, 609 F.3d at 35 (internal quotations marks and alterations omitted). Furthermore, materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor. See A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79–80 (2d Cir. 1993).

#### 2. Forum Selection Clause

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L. Ed. 2d 354 (1964)). If the forum selection clause is both valid and applicable, "it is not necessary to analyze

jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. v. Am. Boat Co., No. 11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012) (quoting Export–Import Bank of the U.S. v. Hi–Films S.A. de C. V., No. 09 Civ. 3573, 2010 WL 3743826, at *4 (S.D.N.Y. Sep. 24, 2010)).

There is a strong presumption in favor of upholding the enforceability of forum selection clauses. Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd., No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("[t]he Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use.") (citations omitted); see M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 9–10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993). Forum selection clauses play a crucial role in ensuring predictability in contract formation. In re Refco Inc., Securities Litigation, No. 08 Civ. 3086, 2009 WL 5548666, at *5 (S.D.N.Y. Nov. 16, 2009) ("Both the Supreme Court and the Second Circuit have recognized that forum selection clauses have economic value and should be enforced in accordance with the expectations of the parties.") (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594, 111 S. Ct. 1522 , 113 L. Ed. 2d 622 (1991); M/S Bremen, 407 U.S. at 13–15; Aguas Lenders Recovery Group, LLC v. Suez, S.A., 585 F.3d 696, 699–700 (2d Cir. 2009); Roby, 996 F.2d at 1363).

To enforce a forum selection clause, a party must show that: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." Tropp v. Corporation of Lloyd's, 385 Fed. App'x 36, 37 (2d Cir. 2010). Even if all three criteria are met, the opposing party may "make a sufficiently strong showing that

'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d 378, 383–84 (2d Cir. 2007) (quoting <u>M/S Bremen</u>, 407 U.S. at 15).

## B. As to Whether the Forum Selection Clause is Enforceable Against Family

In the instant case, the Defendant Family moves to dismiss for lack of personal jurisdiction and asserts that, as a non-signatory, they are not bound by the forum selection clause in the Agreement. The dispute as to the applicability of the forum selection clause in this context largely concerns whether Family is an entirely separate company from Contact so that it should be treated as such under the law, or whether there are enough ties between Family and Contact so that it is fair and just to treat them similarly, at least for jurisdictional purposes at this stage of the proceedings. As set forth below, although the Plaintiff has the burden to demonstrate a *prima facie* case of personal jurisdiction, because the facts presented and because the materials presented by the Plaintiff are construed in the light most favorable to the Plaintiff, the Court finds that it is proper to apply the forum selection clause to the Family entity.

### 1. As to Whether the Clause Was Reasonably Communicated and Mandatory

As an initial matter, the Defendants do not claim that they were unaware of the forum selection clause or that the clause was permissive rather than mandatory. This alone would satisfy the first two prongs. <u>Am. Boat</u>, 2012 WL 527209, at *3 ("American Boat does not claim either that the forum selection clause was not reasonably communicated to it, or that the clause is permissive rather than mandatory. The first two prongs of the governing standard are, therefore, satisfied."); <u>KTV Media Intern., Inc. v. Galaxy Group, LA LLC</u>, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011) ("Plaintiff does not contend that it was unaware of either the Galaxy Operating

Agreement or the forum selection clause contained therein when it allegedly acquired those interests.")

Moreover, the Court notes that Nikolas Spiridellis, one of Family's two managing members, is also the sole officer of Contact, as well as a signatory to the Agreement between Contact and LaRoss. (Declaration of Cynthia Butera Ex. 1, Opp. Exhibit 1.) Therefore, it would be illogical for Family to disclaim knowledge of the relevant forum selection clause. See KTV, 812 F. Supp. 2d at 384 (holding forum selection clause to be reasonably communicated when "Kimberg — registered agent for KTV Media International — has signed many, if not all, of the agreements executed between the parties . . . ")

The Court also notes that the language "with the venue for all such remedies to be set in Nassau County, State of New York, exclusively" is clearly mandatory. See S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.") (quoting Phillips, 494 F.3d at 386); Brennen v. Phyto–Riker Pharms., Ltd., No. 01 Civ. 11815, 2002 WL 1349742, at *3 (S.D.N.Y. June 20, 2002) ("inclusion of the phrase 'exclusive jurisdiction' indicates an intent that any dispute . . . be filed in one of the fora specified").

## 2. As to Whether the Claims and Parties Involved are Subject to the Forum Selection Clause

### a. Non- Signatories

The primary argument of the Defendant Family in support of its motion to dismiss for lack of personal jurisdiction is that Family was not a signatory to the Agreement between Contact and LaRoss, and is therefore not bound by the forum selection clause contained in the Agreement. As an initial matter, the Court notes that Family's non-signatory status does not, as

a general matter, prevent it from being bound by the forum selection clause.  <u>See Aguas</u>, 585

F.3d at 701 ("We find ample support for the conclusion that the fact a party is a non-signatory to

an agreement is insufficient, standing alone, to preclude enforcement of a forum selection

clause.") (collecting cases);  <u>Novak v. Tucows, Inc.</u>, No. 06 Civ. 1909, 2007 WL 922306, at *13

(E.D.N.Y. Mar. 26, 2007) ("Further, at least two courts within this Circuit have held that '[i]t is

well established that a 'range of transaction participants, parties and non-parties, should benefit

from and be subject to forum selection clauses.''") (quoting <u>Weingard v. Telepathy, Inc.</u>, No. 05

Civ. 2024, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005) (internal citations omitted)).

In the context of arbitration agreements, the Second Circuit has noted that non-signatories

may be bound to a contract's venue provision pursuant to at least five different theories: "(1)

incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5)

estoppel."  <u>Am. Bureau of Shipping v. Tencara Shipyard S.P.A.</u>, 170 F.3d 349, 352 (2d Cir.

1909) (citing <u>Thomson-CSF, S.A. v. Am. Arbitration Ass'n</u>, 64 F.3d 773, 776 (2d Cir. 1995)).  In

addition, a number of courts in this Circuit have bound non-signatories that are "closely related"

to one of the signatories to the contract containing the forum selection clause.  <u>See, e.g.</u>, <u>Refco</u>,

2009 WL 5548666, at *10 ("After <u>Aguas</u>, there can be no dispute that forum selection clauses

will be enforced even against non-signatories where they meet the "closely related" standard");

<u>KTV Media</u>, 812 F. Supp. 2d at 386 ("A movant seeking dismissal may enforce a forum

selection clause against a non-signatory where the non-signatory is "closely related" to one of the

signatories") (collecting cases).

Thus, the Court will assess whether the forum selection clause should be applicable to

Family under the theories of estoppel, assumption, and "closely related".

### b. Estoppel

In a number of cases involving arbitration clauses, the Second Circuit has held that a non-signatory is estopped from denying its obligation to arbitrate when it received a 'direct benefit' from a contract containing an arbitration clause. <u>Tencara</u>, 170 F.3d at 353 ("A party is estopped from denying its obligation to arbitrate when it receives a "direct benefit" from a contract containing an arbitration clause."); <u>Thomson–CSF</u>, 64 F.3d at 779 ("Had Thomson directly benefitted from the Working Agreement by seeking to purchase equipment from E & S or enforcing the exclusivity provisions of the Agreement, it would be estopped from avoiding arbitration."); <u>Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.</u>, 9 F.3d 1060, 1064 (2d Cir. 1993) (estopping a party from denying its obligation to arbitrate where it knowingly accepted the benefits of the agreement containing an arbitration clause). Thus, it is clear that this theory of enforceability is valid in the arbitration context.

However, whether the estoppel theory is valid in the forum selection context is the more relevant inquiry. Certainly, a number of courts in this Circuit and others have espoused the general principle that a party is estopped from denying a contract provision when it has directly benefited from the contract. <u>American Boat</u>, 2012 WL 527209, at *4 ("Under this 'direct benefits theory' of estoppel, a party which is a non-signatory to a contract, but which nonetheless receives a direct benefit from that contract, is estopped from seeking exclusion from provisions of the contract."); <u>In re Refco, Inc. Securities Litig.</u>, No. 07 Civ. 11604, 2008 WL 2185676, at *5 (S.D.N.Y. May 21, 2008) ("The lack of a signature on a contract does not affect its validity where the non-signing party received the contract and knowingly accepted its benefits."). Of importance, courts in this Circuit have specifically applied the theory of direct benefits estoppel to cases involving forum selection clauses. <u>See American Boat</u>, 2012 WL 527209, at *5 ("Under

the direct benefits theory of estoppel, American Boat is, therefore, estopped from arguing that it is a non-Member and hence not subject to the forum selection clause."); Refco, 2009 WL 5548666, at *9 ("It is well-settled that a party seeking to obtain the benefits of a contract must also accept its burdens, including contractual forum selection.") (citing Ana Distribution Inc. v. CMA–CGM (America) Inc., 329 F. Supp. 2d 565, 567 (S.D.N.Y. 2004)).  Furthermore, in Hellenic Investment Fund, Inc. v. Det Norske Veritas, the Fifth Circuit interpreted the Second Circuit's ruling in Tencara as extending to forum selection clauses generally.  464 F.3d 514, 518 (5th Cir. 2006) ("In American Bureau of Shipping v. Tencara Shipyard S.P.A., the Second Circuit employed direct-benefit estoppel to bind non-signatory vessel owners to a forum-selection clause in a contract between a classification society and a shipyard") (citing Tencara, 170 F.3d at 353).

The Court agrees with the holdings in the cases set forth above that the theory of direct benefits estoppel is applicable in the forum selection context.  As the Supreme Court and the Second Circuit have noted, an arbitration clause is merely one species of forum selection clauses. Roby, 996 F.2d at 1352 n.2  ("The analysis is no different for the arbitration clauses.  Indeed, an arbitration clause is merely a specialized type of forum selection clause.") (citing Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, 94 S. Ct. 2449, 41 L. Ed. 2d 270 (1974)).  Like arbitration clauses, forum selection clauses enjoy a strong presumption in favor of enforcement. Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd., No. 09 Civ. 7268, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) ("The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the policy favoring their use.") (internal citations omitted); Refco, 2009 WL 5548666 , at *5 ("There is a strong federal policy in favor of the enforcement of forum selection clauses.") (citing M/S Bremen, 407 U.S. at 9–10); Roby, 996

F.2d at 1361); see also New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) (noting that courts must "give substantial deference to the parties' selected forum" and "absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts.") (quoting M/S Bremen, 407 U.S. at 12).

Viewing the facts in the light most favorable to the Plaintiff, the Court finds that the Defendant Family directly benefited from the Agreement. In the context of estoppel, benefits are "direct" when they flow directly from the agreement. Life Technologies Corp. v. AB Sciex Pte. Ltd., 803 F. Supp. 2d 270, 274 (S.D.N.Y. 2011) ("The benefits must be direct—which is to say, flowing directly from the agreement.") (quoting Oppenheimer Co. Inc. v. Deutsche Bank AG, No. 09 Civ. 8154, 2010 WL 743915, at *2 (S.D.N.Y. Mar. 2, 2010)); see also Tencara, 170 F.3d at 353. By contrast, benefits are indirect when they are incidental to the contract or when the non-signatory benefits from the contractual relationship between the signatories but not the contract itself. Life Technologies, 803 F. Supp. 2d at 274 ("In contrast, 'the benefit derived from an agreement is indirect,' and is therefore insufficient to support estoppel, 'where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.'") (quoting Republic of Ecuador v. ChevronTexaco Corp., 499 F. Supp. 2d 452, 458 (S.D.N.Y. 2007)); Ayco Co., L.P. v. Becker, No. 10 Civ. 0834, 2011 WL 3651027, (N.D.N.Y. Aug. 18, 2011) ("The benefit derived from an agreement is indirect where the non-signatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.") (citing Thomson–CSF, 64 F.3d at 778–79).

Here, the Defendant Family directly benefited from the Agreement in several ways. First, according to the Plaintiff and not explicitly disputed by the Defendant, the

"familycontact911.com" product that is the subject of the Agreement, appears to be the product of Family, and not the Defendant Contact. (Spiridellis Reply Aff. ¶ 26 ("During the time period in question, [Family] operated its business through a website at the domain www.familycontact911.com"), Lavino Aff. ¶17,18). On the website of familycontact911.com, the page cites Family as the copyright and trademark owner of the product, rather than Contact. (Spiridellis Reply Aff. Ex. D). Thus, it is logical to conclude that Family benefited from the marketing plan and customer support services LaRoss provided for the "familycontact911.com" product, as well as the LEC licenses LaRoss obtained for "familycontact911.com", under the terms of the Agreement. In Life Technologies Corp. v. AB Sciex Pte. Ltd., the court held that a non-signatory was estopped from denying its obligation to arbitrate when it "knowingly exploited the direct benefits of the Purchase Agreement by obtaining and using the licenses provided by the License Agreement." 803 F. Supp. 2d 270, 272 (S.D.N.Y. 2011).

In addition, the Defendant Family directly benefited from the Agreement because LaRoss paid Family a percentage of the income LaRoss collected from the "familycontact911.com" product, pursuant to the revenue sharing provision in the Agreement. (Amended Complaint, at ¶ 19) ("[P]laintiff would remit monies received from ILD, less the fees paid to the internet marketing vendor, to the defendant, Family, in an amount equal to sixty (60%) percent of the billing settlement net revenues each month.")

Finally, the rationale that underlies the direct benefits estoppel also applies to forum selection clauses in general and is particularly applicable in the instant case. As the Court in American Boat noted, a party "cannot have it both ways" with regard to being bound by a contract. 2012 WL 527209, at *4. If, as Family insists, it had nothing whatsoever to do with the Agreement and is entirely uninvolved in the contract that is the subject of the instant case, then it

has unjustly received many thousands of dollars from the Plaintiff pursuant to a contract it was not associated with. As the court in HD Brous & Co., Inc. v. Mrzyglocki stated, if a non-signatory was "an intended beneficiary of the Agreement, knew that it was an intended beneficiary of the Agreement, and knowingly accepted benefits from the Agreement then it cannot selectively repudiate the obligation to arbitrate set forth in the Agreement." No. 03 Civ. 8385, 2004 WL 376555, at *7 (S.D.N.Y. Feb. 26, 2004) (citing Thomson-CSF, 64 F.3d at 778, 779). Although Family makes much of the fact that it was formed six days after Contact entered into the Agreement, this does not negate a finding that it was created with the intention to benefit from the Agreeement and knowingly did so.

Therefore, under the estoppel theory of enforceability, the Court finds that Family is subject to the forum selection clause in the Agreement and on this ground, its motion to dismiss under Fed. R. Civ. P. 12(b)(2) is denied.

### c. Assumption

Even if this Court were to find the theory of estoppel to be inapplicable to the present case, the Court finds that Family is nevertheless alternatively susceptible to the force of the forum selection clause under the principle of assumption.

In the context of arbitration clauses, the Second Circuit has held that a non-signatory may be bound to a venue provision if it has assumed the contract containing the provision. Tencara, 170 F.3d at 352 (citing Thomson-CSF, 64 F.3d at 776 (2d Cir. 1995)). In Aguas, the Second Circuit held that a non-signatory, even one that did not exist at the time of the formation of the contract, may be bound by a forum selection clause in a contract entered into by a predecessor in interest. 585 F.3d at 697 ("The principal issue is whether… a non-signatory to an agreement may be bound by a forum selection clause and forum non conveniens waiver contained in

contracts entered into by an entity alleged to be a predecessor in interest. We hold that such a non-signatory may be so bound."). A non-signatory need not be the parent corporation of a signatory to be bound under the assumption theory. MBIA Ins. Corp. v. Royal Bank of Canada, 706 F. Supp. 2d 380, 398 n.9 (S.D.N.Y. 2009). ("As with the alter-ego doctrine, courts applying the assumption theory have held nonsignatories that were not the parent corporation of the signatory to be bound by the arbitration agreement.") (citing Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105–07 (2d Cir. 1991)).

However once again, the relevant context here is not arbitration clauses, but rather forum selection clauses. In Impulse Marketing Group, Inc. v. National Small Business Alliance, Inc., No. 05 Civ. 7776, 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007), one district court held that a non-signatory had assumed a contract and bound the non-signatory to a forum selection clause where the non-signatory's actions "hue closer to that of a party that was acting under the obligation of a contract than one that is merely assisting in its administration." . The Impulse Court noted that "[a] written contract need not be signed to be binding against a party, so long as the party indicates through performance of its terms or other unequivocal acts that it intends to adopt the contract." Id. at *5 (quoting Allen v.. Nat'l Video, Inc., 610 F. Supp. 612, 631 (S.D.N.Y. 1985)).

In the instant case, the precise contours of the relationship between the two Defendant entities is not fully explained by any of the parties or by the evidence submitted. Nonetheless, based on the Plaintiff's allegations and viewing the facts in the light most favorable to the Plaintiff, the Plaintiff has made a sufficient *prima facie* showing that Family assumed Contact's role under the Agreement.

First, as noted above, the product that is the subject of the Agreement, "familycontact911.com," appears in many ways to have been Family's product. The Defendant Family's incorporated name is FAMILYCONTACT911.COM, LLC. (Butera Aff. Ex. 2). Moreover, the Defendants make statements that indicate that "familycontact911.com" was Family's product. (Spiridellis Reply Aff. ¶ 26) ("During the time period in question, [Family] operated its business through a website at the domain www.familycontact911.com"). According to the Plaintiff, for the duration of the agreement, Family's "only business and only source of revenue was generated pursuant to the terms of the Agreement carried out by LaRoss in New York." (Lavino Aff. ¶17, 18). In fact, the Plaintiff claims that during the execution of the Agreement, Spiridellis and Lavino, an officer at Laross, actually discussed the formation of the Family entity. (Lavino Aff., ¶9.) In fact, the Plaintiff alleges that the sole reason for the creation of the Family entity was to effectuate the Agreement between LaRoss and Contact.

Moreover, the monies that LaRoss sent to Family each month from the Family bank account in New York, were deposited in the bank account of Contact. (Lavino Afd., ¶20, Ex. 7.) In addition, the one check received by LaRoss in connection with termination of the Agreement was issued by Family, which according to the Defendants, was on behalf of Contact. (Lavino Afd., ¶20, Ex. 9.) This further demonstrates that Family's business was the emergency contact service — Family Contact 911 operated through familycontact911.com — that was the subject of the Agreement.

Second, subsequent to the signing of the Agreement, the Defendants directed LaRoss to obtain the LEC licenses in the name of Family, rather than Contact, to reduce the likelihood of complaints damaging Contact's other products. (See Pl. Mem. in Opp., Ex. 2.) The LEC licenses provided by the Plaintiff demonstrate that the licenses were, in fact, processed by

LaRoss in Family's name, and Spiridellis signed them as CEO of Family. (See Pl. Mem. in Opp., Ex. 5.) Furthermore, as noted above, Family was paid by LaRoss under the Agreement's revenue sharing provision. (Amended Complaint, at ¶ 19). The checks, which were subsequently cashed, were made out to Family, not to Contact. (Pl. Mem. in Opp., Ex. 7.)

Based on the above, the Court is satisfied that the Plaintiff has demonstrated that Defendant Family assumed the Agreement in question. The Second Circuit has held that courts should apply forum selection clauses to prevent "parties to contracts from using evasive, formalistic means lacking economic substance to escape contractual obligations." Refco, 2009 WL 5548666, at *8 (citing Aguas, 585 F.3d at 701). The Defendants' initial explanation to LaRoss for switching the name of the company for whom the LEC licenses would be obtained was that "I would like to use a different Company since being cut off by a LEC for lack of service or too many complaints means you're cut off for good." (Pl. Mem. in Opp., Ex. 2.) Moreover, Spiridellis, Contact's sole officer/director, is one of Family's two managing members; the Defendants share registered agents; and, at Family's inception, the two companies shared a business address, which was Spiridellis' home address. (Butera Aff. Ex. 2; Lavino Aff., at ¶ 10.. Under these circumstances, allowing the Defendant Family to subsequently escape its obligations through a bait and switch of what are alleged to be nearly identical corporations would be precisely the type of evasive maneuver the theory of assumption was meant to protect against.

Therefore, under the alternative theory of assumption, the Court finds that Family is subject to the Agreement's forum selection clause.

### d. Closely-Related

Finally, the Court will review one additional potential framework under which the Plaintiff may enforce the forum selection clause against a non-signatory.

As an initial matter, it is well established in this Circuit that a non-signatory may enforce a forum selection clause against a signatory — the opposite situation of the one that the Court faces here — where they are "closely related." Magi XXI, Inc. v. Stato Della Citta Del Vaticano, 818 F. Supp. 2d 597, 605 (E.D.N.Y. 2011) ("A non-signatory may enforce a forum selection clause when it is closely related to a signatory."); Thibodeau v. Pinnacle FX Investments, No. 08 Civ. 1662, 2008 WL 4849957, at *5 n.4 (E.D.N.Y. Nov. 06, 2008) (acknowledging that a non-signatory may invoke the forum selection clause if the party is "closely related" to the signatory) (quoting Direct Mail Production Services Ltd. v. MBNA Corp., No. 99 Civ. 10550, 2000 WL 1277597, at *3 (S.D.N.Y. Sep. 7, 2000) (quotations and citations omitted)); In re Optimal U.S. Litig., 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) (allowing a non-signatory to bind a signatory where they are "'sufficiently close so that the non-party's enforcement of the forum selection clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'") (quoting Direct Mail, 2000 WL 1277597, at *3).

As for the opposite situation, in Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993), the Seventh Circuit similarly held that a signatory may enforce a forum selection clause against a non-signatory where the parties are closely related in way that it is foreseeable that the non-signatory will be bound. See id. ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound.") (citations omitted). Although the Second Circuit, in Smoothline Ltd. v. North American Foreign Trading Corp., 249 F.3d 147, 155 n.4 (2d Cir. 2011), declined to apply Hugel's "closely related" test in the arbitration context, the Second Circuit in Aguas cited Hugel with approval in the context of a forum selection clause. 585 F.3d at 700.

Of importance, a number of district court cases in this Circuit have applied the "closely related" theory in the analogous situation of allowing a signatory to bind non-signatories to a contract containing a forum selection clause  See, e.g., KTV Media, 812 F. Supp. 2d at 386 ("A movant seeking dismissal may enforce a forum selection clause against a non-signatory where the non-signatory is "closely related" to one of the signatories") (citations omitted); MGM Studios Inc. v. Canal+ Distrib. S.A.S., No. 07 Civ. 2918, 2010 WL 537583, at *5 (S.D.N.Y. Feb. 9, 2010) ("Under New York law, a signatory to a contract may invoke a forum selection clause against a non-signatory if the non-signatory is 'closely related' to one of the signatories . . . "); Kahala Corp. v. Holtzman, No. 10 Civ. 4259, 2010 WL 4942221, at *3 (S.D.N.Y. Dec. 03, 2010) ("Under New York law, a forum selection clause may be enforced against a non-signatory who is "closely related" to the dispute such that enforcement of the forum selection clause against him is foreseeable"); Refco, 2009 WL 5548666 at *10 ("After Aguas, there can be no dispute that forum selection clauses will be enforced even against non-signatories where they meet the "closely related" standard"); Great Northern Ins. Co. v. Constab Polymer-Chemie GmbH & Co., No. 01 Civ. 0882, 2007 WL 2891981, at *8 (N.D.N.Y. Sep. 28, 2007) (finding that the non-signatory may be nevertheless bound by the clause if the non-signatory "is closely related to the dispute such that it becomes foreseeable that it will be bound.") (citations omitted); Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC, No. 02 Civ. 0767, 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (enforcing a forum selection clause against a non-signatory corporate officer who was held to be closely related to the corporation).  Therefore, the Court will proceed to apply this framework to the case at hand.

A non-signatory to a contract is held to be sufficiently "closely related" to the dispute when "enforcement of the forum selection clause is foreseeable by virtue of the relationship

between the signatory and the party sought to be bound." In re Optimal U.S. Litig., 813 F. Supp. 2d at 369 (citing Direct Mail, 2000 WL 1277597, at *3 (internal quotation marks and citation omitted)).

The Court finds that the Defendant Family is sufficiently closely related to the Defendant Contact, particularly with regard to the Agreement, so that it should have been foreseeable to Family that it would be bound by the forum selection clause in the Agreement. The Court notes that the fact that the forum selection clause refers only to Contact and LaRoss "does not preclude application of the 'closely related' doctrine, which exists precisely because there are some situations where courts believe that parties who are not signatories to such a clause should nonetheless be bound by that clause." Magi XXI, 818 F. Supp. 2d at 609 (enforcing a forum selection clause that was defined in reference to the parties to the agreement) (citing Firefly Equities, LLC v. Ultimate Combustion Co., Inc., 736 F. Supp. 2d 797, 800 (S.D.N.Y. 2010)).

The court in Universal Grading Service v. eBay, Inc., No. 08-CV-3557, 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) held that a close business relationship between a signatory and non-signatory is an important factor in determining if it was foreseeable that the non-signatory would be bound. See id. ("Other courts have found that a close business relationship between a non-party and a party to an agreement is an important consideration in determining whether a forum selection clause in the agreement is enforceable against the non-party.") (collecting cases); Refco, 2009 WL 5548666, at *11 (holding non-signatory and signatory to be closely related when their business operations were "intertwined."); see also Kahala, 2010 WL 4942221, at *3 (finding non-signatory bound to forum selection clause where he was "closely related to the contract dispute" and to the signatory Defendants).

As noted above, Defendant Family is intimately connected to both Defendant Contact and to this lawsuit. Spiridellis, Contact's sole officer/director, is one of Family's two managing members; the Defendants share registered agents; and, at Family's inception, shared a business address (Spiridellis' home address). (Butera Aff. Ex. 2; Lavino Aff. ¶ 10). Family's sole product "familycontact911.com" is "powered by Contact 911", and Family received funds pursuant to the revenue sharing provision contained in the agreement. (Spiridellis Reply Aff. ¶ 26; Reply Aff. Ex. D). These select factors are sufficient to warrant a finding that the two entities "closely related" for purposes of the relevant inquiry.

Moreover, the Plaintiff alleges that the Defendants acted in concert to deprive it of its share under the Agreement. Based on the Plaintiff's allegations, Family seems to function as essentially a subsidiary of Contact, and was formed in order to prevent complaints from the "familycontact911.com" product from affecting Contact's other products and future licensing opportunities. (Pl. Mem. in Opp., Ex. 2). This is another premise upon which to enforce the forum selection clause as against Family. See Weingard, 2005 WL 2990645, at *6 (finding non-signatories and signatories to be closely related where they allegedly acted in concert).

Based on the above, the Court is satisfied that Family is sufficiently "closely related" to the Agreement between Contact and LaRoss so that it should have been foreseeable to Family that its role in the Agreement and its relationship to Contact would lead to it being bound by the forum selection clause contained in the Agreement.

In light of this conclusion, the Court need not analyze the applicability of New York's long-arm jurisdiction. See Atl. Mut. Ins. Co. v. M/V HUMACAO, 169 F. Supp. 2d 211, 217–18 (S.D.N.Y. 2001) ("In light of my conclusion that NPR has made a *prima facie* showing of Empire's consent to jurisdiction under the forum selection clause, I need not resolve the parties'

contentions regarding the application of New York's long-arm statute."); Keene Corp. v. Bogan, 683 F. Supp. 977, 978 (S.D.N.Y. 1988) ("Although the plaintiff asserts as an alternative theory of jurisdiction that Bogan was doing business in New York for purposes of the New York long-arm statute, CPLR § 302, I need not and do not go beyond the forum selection clause to decide this motion.").

## III. FAILURE TO STATE A CLAIM

### A. Legal Standard on a Motion to Dismiss

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929, 570, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles. Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. at 72 (quoting Iqbal, 129 S.Ct. at 1949). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." Iqbal, 129 S.Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor. <u>Zinermon v. Burch</u>, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); <u>In re NYSE Specialists Secs. Litig.</u>, 503 F.3d 89, 91 (2d Cir. 2007). Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Rule 12(b)(6). <u>Hertz Corp. v. City of N.Y.</u>, 1 F.3d 121, 125 (2d Cir. 1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198 (2d Cir. 2001) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

**B. <u>As to Whether the Fraud Claim Should be Dismissed</u>**

The Defendants first argue that the Plaintiff's cause of action for fraud as against both Defendants, Contact and Family, must be dismissed because the alleged misrepresentations relate entirey to the Plaintiff's breach of contract claim, namely, that the Plaintiff is entitled to net revenues under the Agreement from the Family Contact 911 product. In other words, the Defendants contend that because the misrepresentations do not involve conduct that is extraneous to the contract, the Plaintiff's fraud claim must be dismissed as duplicative of the Plaintiff's breach of contract claim.

New York law generally requires that a fraud claim raised in the context of a contract dispute be "sufficiently distinct from the breach of contract claim." <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 20 (2d Cir. 1996) (quoting <u>Papa's–June Music, Inc. v. McLean</u>, 921 F.Supp. 1154, 1162 (S.D.N.Y. 1996)). A fraud claim generally will not lie if it arises "out of the same facts as plaintiff's breach of contract claim." <u>Telecom Int'l. Am., Ltd. v.</u>

AT & T Corp., 280 F.3d 175, 196 (2d Cir. 2001). However, parallel fraud and contract claims may be maintained if the plaintiff: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc., 98 F.3d at 20 (internal citations omitted); see Great Earth Intern. Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 425 (S.D.N.Y. 2004) (noting that a fraud claim and a breach of contract claim can coexist where the plaintiff makes one of three showings discussed in Bridgestone/Firestone ).

Here, the Plaintiff does not attempt to argue that the Defendants had any kind of duty to it independent of the Agreement, nor does it try to assert that it is seeking special damages. Rather, the Plaintiff endeavors to contend that it has sufficiently alleged a claim for fraud that is collateral or extraneous from the provisions in the Agreement. First, the Plaintiff asserts that the Defendants, through their mutual agent Spiridellis, made false and misleading statements to the Plantiff regarding future performance. In particular, Spiridellis allegedly represented to the Plaintiff that although the Defendants were assuming functions that were previously handled by the Plaintiff, it would not affect the Plaintiff's rights and entitlement to their share of the net revenues under the Agreement. Second, the Plaintiff claims that the Spiridellis made a subsequent false and misleading misrepresentation that the Defendants were not earning net revenues and that based upon this false accounting, that the Plaintiff was not entitled to its share of the net revenues. (Am. Compl., at ¶¶ 34, 35.) Specifically with regard to whether these misrepresentations were collateral to and extraneous to the obligations under the Agreement, the Plaintiff argues that the Defendants' affirmative misrepresentations of fact "concerned the accounting of the LEC billing[;] the ILD remittance[;] and the accounting for the net revenues",

and accordingly "were extraneous to the obligations and performance under the Agreement." On the other hand, the Defendants claim that the alleged misrepresentations that form the basis for the Plaintiff's fraud claim are not collateral or extraneous to the Agreement, but instead relate directly and specifically to the Plaintiff's alleged right to receive payments under the Agreement.

The Court agrees with the Defendants that, in this case, the Plaintiff's breach of contract claim is duplicative of its fraud claim. Most of the alleged misrepresentations at issue concern whether the Defendants falsely claimed that there were no net revenues from the Family Contact 911 product and consequently whether the Plaintiff was entitled to any payments pursuant to the Agreement. It would be absurd to find that such a fraud claim did not derive directly and wholly related to the Agreement. See Sylhan, LLC v. Schwarzkopf Techs. Corp., No. 01 Civ. 4368, 2002 WL 3250796, at *5 (E.D.N.Y. Aug. 9, 2002) ("Comparing the circumstances presented here to the large body of Second Circuit case law, this Court is of the opinion that Defendant's alleged misrepresentation is neither collateral nor extraneous to the contract, but is instead the very essence of the contract and that no special relationship existed."); see also Kranz v. Chateau Stores of Canada, 256 A.D.2d 186, 187, 683 N.Y.S.2d 24 (1st Dep't 1998) ("Plaintiff's fraud cause of action fails here because the breach of duty alleged by him, namely, the false statement of defendant's net profits, was not collateral or extraneous to the contract"). Cf. Shpak v. Curtis, No. 10 Civ. 1818, 2011 U.S. Dist. LEXIS 109011, at *34 (E.D.N.Y. Sept. 26, 2011) ("The breach of contract claim, described below, alleges a very narrow promise concerning the shipping and safekeeping of the Equipment, while the fraud claim alleges a raft of overarching misrepresentations, both preceding and succeeding the formation of the contract."). The statements at issue here specifically concerned the Defendants' intention—or lack thereof—to

breach the contract. Any statements regarding "accounting" would similarly relate specifically and directly to the Agreement and the Plaintiff's claimed right to payment under the Agreement.

With regard to any statements made by Spiridellis regarding future performance, these also are not distinct from the breach of contract claim. Although a promise made with a preconceived and undisclosed intention of not performing it can give rise to a fraudulent inducement claim, the promise must be collateral or extraneous to the terms of the agreement . . . ." D.S. Am. (E.), Inc. v. Chromagrafx Imaging Sys., Inc., 873 F.Supp. 786, 796 (E.D.N.Y. 1995). Here, the promise that the Agreement would continue to be in full force and effect is alleged to be merely an insincere promise of future performance under a contract, which is insufficient to allege fraud. See id. at 798; see also Miller v. Holtzbrinck Publishers, LLC, No. 08 Civ. 3508, 2009 WL 528620, at *5 (S.D.N.Y. March 3, 2009) ("Thus, Hunter's alleged representations that Plaintiff would be paid royalties for writing Hunter's memoirs merely 'constitutes a 'promissory statement as to what would be done in the future' and therefore cannot serve as the basis of a fraud claim, as 'a fraud claim premised on a promise of future performance of a contractual obligation would be duplicative of [a] breach of contract claim.'" (quoting Kaliner v. Mt. Vernon Monetary Mgmt. Corp., 07 Civ. 4643, 2008 U.S. Dist. LEXIS 67456, at *14–15, 2008 WL 4127767 (S.D.N.Y. Sept. 3, 2008)).

Finally, to the extent that the Plaintiff asserts that it should be able to pursue its fraud claim in the alternative against Family in the event it is found to not be subject to the contract in question, such an argument ultimately fails. See Alta-Medine v. Crompton Corp., No. 00 Civ. 5901, 2001 WL 428249, at *1 (S.D.N.Y. April 26, 2001) ("the 'extraneous to a contract' exception of Bridgestone/Firestone is not satisfied simply because a jury could find that there was no contract." (citing Leonard v. PepsiCo, Inc., 88 F. Supp. 2d 116 (S.D.N.Y. 1999)).

Therefore, the Court need not assess whether the Plaintiff's fraud allegations are not pled with the requisite particularity under Fed. R. Civ. P. 9(b). The Defendants' motion to dismiss the Plaintiff's fraud claims is granted.

**C.** **As to Whether the Conversion Claims Should be Dismissed**

The Defendants also contend that the Plaintiff's conversion claim should be dismissed as duplicative.

Under New York law, to plead a claim of conversion, a plaintiff must establish that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal citation and quotation marks omitted). However, similar to a claim of fraud, a conversion claim may only proceed if there are allegations of violations and damages distinct from those prediated on a breach of contract. See Command Cinema Corp. v. VCA Labs, Inc., 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006); Priolo Commc'ns, Inc. v. MCI Telecomms. Corp., 248 A.D.2d 453, 669 N.Y.S.2d 376, 377 (1998) ("The plaintiff's claim alleging conversion merely restates its cause of action to recover damages for breach of contract and does not allege a separate taking. A claim to recover damages for conversion cannot be predicated on a mere breach of contract."). Thus, "[i]n determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." Physicians Mut. Ins. Co., No. 07 Civ. 10490, 2009 WL 855648, at *10 (S.D.N.Y. March 25, 2009) (quoting AD Rendon Commc'ns,

Inc. v. Lumina Ams., Inc., No. 04 Civ. 8832, 2007 WL 2962591, at *5 (S.D.N.Y. Oct. 10, 2007)).

Here, the same facts are involved in the breach of contract and conversion claims. The breach of contract claim alleges that the Defendants breached the terms of the Agreement by failing to properly account for and remit to the Plaintiff its share of the net realized revenues under the Agreement after March 2009. The conversion claim similarly claims that the "Plaintiff has a superior right, that the defendant, to/over the monies representing plaintif's forty percent (40%) share of the net realized revenues from March 2009 to date" and thus the Defendants have converted, as their own, the Plaintiff's share of the net revenues realized from the Family Contact 911 product by the defendants from March 2009 to date. This is entirely duplicative of the Plaintiff's claim that the Defendants breached the terms of the Agreement by not participating in the profit sharing scheme as set out in the contract. In addition, the Plaintiff is seeking precisely the same damages for this claim.

Therefore, the Court agrees with the Defendants that the Plaintiff's conversion claim is also entirely duplicative of the breach of contract claim and is therefore appropriately dismissed.

**D. As to Whether the Claim for Unjust Enrichment Should be Dismissed**

The Plaintiff also asserts a claim for unjust enrichment against Family. In particular, the Plaintiff claims that the Defendant Family "failed to remit to the Plaintiff its share of the net realized revenues from defendant' Family Contact 911 customers' LEC billing for the period of March 2009 to date, despite due demands by the plaintiff." (Am. Compl., at ¶ 48.) In other words, the Plaintiff is making a claim that the Defendants breached the Agreement by not paying the Plaintiff monies that were owed pursuant to its terms, and thus that Family has been and

continues to be unjustly enriched in the amount of the Plaintiff's share of the net realized revenues.

To prevail on a claim for unjust enrichment in New York State, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 519 (2d Cir. 2001). It is thus a quasi-contractual claim that "ordinarily can be maintained only in the absence of a valid, enforceable contract." Ohio Players, Inc. v. Polygram Records, Inc., No. 99 Civ. 33, , at *4 (S.D.N.Y. Oct. 27, 2000); see also Clark–Fitzpatrick, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."). "That principle applies even where 'the party seeking to dismiss the claim is not a party to the contract.'" Teachers Ins. & Annuity Ass'n of Am. v. CRIIMI MAE Servs. Ltd. P'ship, 681 F. Supp. 2d 501, 511 (S.D.N.Y. 2010) (citing Micro Bio–Medics, Inc. v. Westchester Med. Ctr., 6 Misc. 3d 1003(A), 800 N.Y.S.2d 350 (Sup. Ct. 2004)).

Of importance in this case, "decisions both in New York State courts and in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract." Am. Med. Ass'n v. United Healthcare Corp., No. 00 Civ. 2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007) (collecting cases); SCM Grp., Inc. v. McKinsey & Co., Inc., No. 10 Civ. 2414, 2011 WL 1197523, at *7–8 (S.D.N.Y. March 28, 2011) ("where an express and valid contract exists concerning the rights at issue, quasi-contract claims such as

unjust enrichment are precluded even when asserted against non-signatories to the contract.");
Bellino Schwartz Padob Adver. v. Solaris Mktg. Grp., 222 A.D.2d 313, 635 N.Y.S.2d 587, 588
(1995) ("The existence of an express contract between Solaris and plaintiff governing the subject
matter of the plaintiff's claim also bars any quasi-contractual claims against defendant Titan, as a
third party nonsignatory to the valid and enforceable contract between those parties."); Feigen v.
Advance Capital Mgmt. Corp., 150 A.D.2d 281, 541 N.Y.S.2d 797, 799 (1989) ("[A] non-
signatory to a contract cannot be held liable where there is an express contract covering the same
subject matter.").

Here, the subject matter of the dispute is the Plaintiff's right to monies owed under the
provisions of the Agreement. Although Family was not a party to the Agreement, it was
allegedly enriched as a result of its noncompliance with the profit sharing scheme in the
Agreement. Thus, this claim falls squarely within the subject matter of the Agreement.

The Plaintiff attempts to argue that it may simultaneously allege a breach of contract and
unjust enrichment claim in its complaint as alternative theories when there is a bona fide dispute
as to the existence of the contract. In other words, the Plaintiff asserts that because Family
disputes that it is a party to the contract, then the Plaintiff may proceed with its unjust enrichment
claim against that entity. However, this contention is without merit. "[T]he existence of a valid
and binding contract governing the subject matter at issue in a particular case *does* act to
preclude a claim for unjust enrichment even against a third party non-signatory to the
agreement." Network Enters., Inc. v. Reality Racing, Inc., No. 09 Civ. 4664, 2010 WL 3529237,
at *7 (S.D.N.Y. Aug. 24, 2010) (quoting Law Debenture v. Maverick Tube Corp., No. 06 Civ.
14320, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases)). There is no
dispute whasoever as to whether a valid and enforceable contract in this case exists. Rather, the

dispute is whether Family may be liable as a non-signatory. This alone is insufficient to sustain the unjust enrichment claim. See Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owner I, LLC, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) ("[Plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it . . . from seeking quasi-contractual recovery for events arising out of the same subject matter.").

Accordingly, the unjust enrichment claims should be dismissed. See Vitale v. Steinberg, 307 A.D.2d 107, 764 N.Y.S.2d 236, 239 (2003) ("[T]he existence of . . . an express contract governing the subject matter of plaintiff's claims, also bars the unjust enrichment cause of action as against the individual defendants, notwithstanding the fact that they were not signatories to that agreement.").

**E. As to Whether the Plaintiff's Claim for an Accounting Should be Dismissed**

In the Amended Complaint, the Plaintiff claims that if the Defendants have made material misstatements concerning the accounting for new revenues from the Family Contact 911 billing after March 2009, and thereby have improperly accounted for net revenues in breach of the Agreement, then LaRoss is entitled to an accounting of all monies remitted to the Defendants directly from ILD for the period of March 2009 to date, relating to all LEC billing for the Family Contact 911 customers.

The Defendant Family asserts that because it is not a party to the Agreement, and thus owes no duty, contractual, fiduciary or otherwise to the Plaintiff. Therefore, Family contends that Laross has no standing to assert such a claim against it and is simply not entitled to this relief. In response, the Plaintiff claims that the Defendants voluntarily took over the billing functions from the Plaintiff, imposing a duty to account to the Plaintiff, and thus the Defendants' motion to dismiss this cause of action should be denied.

The Court finds that the Plaintiff has not appropriately asserted an accounting cause of action against the Defendants. Claims for an accounting are an equitable cause of action. "The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest". Palazzo v. Palazzo, 121 A.D.2d 261, 265, 503 N.Y.S.2d 381 (2d Dep't 1986); see Weinstein v. Natalie Weinstein Design Assoc., Inc., 86 A.D.3d 641, 643, 928 N.Y.S.2d 305 (2d Dep't 2011); see also Byrd v. Brown, 94 Fed App'x 1 (2d Cir. 2004) ("even if they have not waived it, their claim for an accounting cannot stand because they have not established the existence of a fiduciary relationship between themselves and any of the appellees."). Notably,"it is well established that the same conduct constituting the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by the contract but independent of the contract itself." La Barte v. Seneca Resources Corp., 285 A.D.2d 974, 728 N.Y.S.2d 618 (4th Dep't 2001). Whether a fiduciary relationship exists between parties "is necessarily fact-specific to the particular case". Wiener v. Lazard Freres & Co., 241 A.D.2d 114, 122, 672 N.Y.S.2d 8 (1st Dep't 1998).

Here, the Plaintiff has failed to allege any facts as to a fiduciary relationship between the Plaintiff and Family and/or Contact beyond the terms of the contract. See Waldman v. Englishtown Sportswear, Ltd., 92 A.D.2d 833, 460 N.Y.S.2d 552, 556 (1983) ("The existence of a fiduciary relationship is essential for a cause of action in equity for an accounting arising out of the contract between the parties."). "A conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." Argonaut P'ship L.P. v. Bankers Trustee Co., No. 96 Civ.1970, 2001 WL 585519, at *3 (S.D.N.Y. May 30, 2001) (quoting

Oursler v. Women's Interart Ctr., Inc., 170 A.D.2d 407, 408, 566 N.Y.S.2d 295, 297 (1st Dep't 1991)).  As stated by one district court:

> Under New York law, a fiduciary relationship exists from the assumption of control and responsibility, and is founded upon trust reposed by one party in the integrity and fidelity of another.  A fiduciary relationship cannot arise between parties to an arms length commercial transaction absent extraordinary circumstances.

Credit Suisse First Boston Mortgage Capital LLC v. Cohn, No. 03 Civ. 6146, 2004 WL 1871525, at *5 (S.D.N.Y. Aug. 19, 2004) (internal citations omitted) (citing Nat'l Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 678-79 (S.D.N.Y. 1991)).  Here, the Amended Complaint describes a contract to perform certain services and share revenues.  There are no allegations— not even conclusory ones—so as to transform this ordinary commercial relationship into a fiduciary one.

Therefore, the Plaintiff's cause of action for an accounting is dismissed.

## F. As to Whether the Plaintiff's Claim for Attorneys' Fees Should be Dismissed

Finally, the Plaintiff claims that paragraph 5 of the Agreement provides for the recovery of reasonable attorneys' fees in the event of breach, and thus, the Plaintiff is entitled to such fees in bringing this action.  The Defendants argue that under the terms of the Agreement, in particular paragraph 5, attorneys' fees are only awarded to a prevailing party for claims relating to "non-circumvention and/or solicitation" as defined in the Agreement, but that the claims in this action have nothing to do with either non-circumvention or solicitation and accordingly should be dismissed.  Paragraph 5 of the Agreement, entitled "Mutual Non-Circumvention", states in part that "both parties agree not to circumvent each other by approaching any and all sources of confidential information."  (Am. Compl. Ex. 1, at ¶ 5.)  This paragraph then goes on to state that "in case of breech [sic] of this section, both will be awarded monetary damages

(including reasonable attorney fees) as attributable by New York State law". (Am. Compl. Ex. 1, at ¶ 5.) The Court agrees that this because there is no circumvention or solicitation at issue in this case, that there can be no claim for attorneys' fees pursuant to this section.

However, there is another provision of the Agreement under which the Plaintiff may recover attornyes' fees. Paragraph 3 of the Agreement, entitled "Indemnification", states in part that

> Either party shall defend, indemnify and hold harmless the other party, its affiliates, their respective officers, directors, shareholders, employees, agents successors and assigns, and each of them, from and against, any and all damages[,] losses, claims, liabilities, demands . . . . including but not limited to attorneys' fees, . . . arising out of or otherwise based upon any of the following:
>
> a. Any breach or default by either party of or under any of the provisions of this Agreement or of any other agreement or instrument to which either party or an affiliate of either party (for purposes hereof, an "affiliate" of either party shall include any person controlling, controlled by or under common control with either party),

(Am. Compl. Ex. 1, at ¶ 3.)

Attorneys' fees are properly granted only if an independent basis exists for the award. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 257–59, 95 S.Ct. 1612, 1621–22, 44 L. Ed. 2d 141 (1975) (noting exceptions to the "American Rule" that the prevailing party is not entitled to attorneys fees include (1) statutory basis, (2) enforceable contract, (3) willful violation of court order, (4) bad faith action, and (5) litigation creating common fund for the benefit of others).

Certainly, when an obligation to reimburse another party for its litigation expenses arises by contract, the terms of that agreement "must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491, 549 N.Y.S.2d 365, 367, 548 N.E.2d 903 (1989). Nevertheless, the Court

finds the language at issue here—particularly pargraph 3— to be ambiguous and incomplete, and neither party has provided sufficient information at this stage of the litigation for the Court to conclusively say that no claim for attorneys' fees may lie against an affiliate of one of the parties, namely Family. The Court notes that the Defendants made no effort in their Reply memorandum to respond to the Plaintiff's contentions concerning the language in paragraph 3. Therefore, the Court finds it premature to dismiss the claim for attorneys' fees as against Family, and thus the Defendants' motion to dismiss this claim is denied.

### IV. CONCLUSION

As the Plaintiff has already filed an amended complaint and has not demonstrated any basis whatsoever that it would be entitled to recovery for fraud, conversion, unjust enrichment, or accounting, the Court will not permit the Plaintiff to amend its complaint for a second time. Thus, the dismissal of these claims is with prejudice.

For the foregoing reasons, it is hereby

**ORDERED,** that the Defendants' motion to dismiss for lack of personal jurisdiction is denied; and it is further

**ORDERED**, that the Defendants' motion to dismiss the fraud, conversion, unjust enrichment, and accounting claims is granted with prejudice, and it is further

**ORDERED**, that the Defendants' motion to dismiss the claim for attorneys' fees is denied.

**SO ORDERED.**

Dated: Central Islip, New York
       July 10, 2012

                                              ____/s/ Arthur D. Spatt_____
                                              ARTHUR D. SPATT
                                              United States District Judge